**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IRMA GARCIA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.  14-cv-00870-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF Nos. 15 and 16] |

Plaintiff Irma Garcia ("Garcia") appeals a final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Before the Court are the parties' cross-motions for summary judgment, which have been fully briefed. *See* ECF Nos. 15-17.

Upon consideration of the briefing[1] and for the reasons set forth below, Garcia's motion is DENIED and the Commissioner's motion is GRANTED.

**I.　BACKGROUND**

Garcia was born in Mexico in 1966, moved to the United States when she was sixteen years old, is a United States citizen, and speaks both English and Spanish.[2] Administrative Record ("AR") 32 (ALJ Dec.), 45 (Hrg. Tr.), 190-92 (Disability Report), 507 (Forman Report). She has

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

[2] Although Garcia indicated on her Disability Report that she could *not* speak and understand English, AR 190 (Disability Report), a consulting clinical psychologist, Jenny Forman, indicated in her report that Garcia was "fluent in English and Spanish," AR 507 (Forman Report), and Garcia testified at the administrative hearing in English without the aid of an interpreter, AR 43-71 (Hrg. Tr.).

an eighth grade education[3] and past relevant work as a caregiver and a certified nursing aid. AR 190-92 (Disability Report). On December 27, 2010,[4] she applied for a period of disability and disability insurance benefits, alleging disability as of December 4, 2009. AR 72 (Initial Disability Determination Transmittal), 73 (Initial Disability Determination Explanation). She claimed inability to work because of "Disorders of Back," "Essential Hypertension," and "Lower back surgery." *Id.* Garcia's application was denied initially and upon reconsideration. AR 72 (Initial Disability Determination Transmittal), 82 (Recon Disability Determination Transmittal). An Administrative Law Judge ("ALJ") conducted a hearing via video on October 10, 2012. AR 41 (Hrg. Tr.). The ALJ presided over the hearing from San Jose, California while Garcia and her counsel appeared in Watsonville, California. AR 24 (ALJ Dec.). On October 19, 2012, the ALJ issued a written decision concluding that Garcia was not disabled and thus was not entitled to disability insurance benefits. AR 43-55 (ALJ Dec.). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. AR 1 (Not. of Appeals Council Action). Garcia now seeks judicial review of the denial of benefits.

## II.     LEGAL STANDARD

### A.     Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In this context, the term "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a

---

[3] The ALJ noted in his written decision that although Garcia reported an eighth grade education in her Disability Report, she told Dr. Forman that she had a tenth grade education. *See* AR 32 (ALJ Dec.), 191 (Disability Report), 507 (Forman Report). The ALJ concluded that the discrepancy regarding Garcia's education did not affect his analysis. AR 32 (ALJ Dec.).

[4] Although the disability determination transmittal and the ALJ's decision refer to an application date of December 27, 2010, *see* AR 72 (Initial Disability Determination Transmittal), 24 (ALJ Dec.), Garcia's application is dated January 27, 2011, *see* AR 176-83 (Application). A written statement indicating an intent to claim benefits may establish a protective filing date if it meets certain requirements. 20 C.F.R. § 404.630. The protective filing date is used as the effective date of the application. *Id.* The Court presumes that December 27, 2010 is a protective filing date.

reasonable person might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Id.* Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Id.*

### B. Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled; if so, the analysis proceeds to step three. *Id.* At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or equals an impairment in the Listing.[5] 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled; if not, the analysis proceeds to step four. *Id.* At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to do his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled; if not, the analysis proceeds to step five. *Id.* At step five, the ALJ determines whether the claimant can do other jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.* "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step

---

[5] The Listing of Impairments describes conditions that are generally considered severe enough to prevent a person from doing any gainful activity. *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990).

3

1  five." *Bray,* 554 F.3d at 1222.

## III. DISCUSSION

The ALJ determined that Garcia's earnings records showed that she had acquired sufficient quarters of coverage to remain insured through December 31, 2014.  AR 24 (ALJ Dec.).  He also found that between Garcia's alleged onset date of December 4, 2009 and the date of the ALJ's written decision of October 19, 2012, Garcia did not perform substantial gainful activity (step one); did have a severe combination of impairments consisting of "s/p May 24, 2010 lumbar L4-5 and L5-S1 microlaminotomy and microdiskectomy (due to L5-S1 radiculopathy, prominent lumbar posterolateral disc protrusion at L4-5 with lateral effect and flattening of the left side of thecal sac, foraminal narrowing at right L4-5, and left L5-S1), and post-laminectomy syndrome" (step two); did not have impairments equaling an impairment in the Listing (step three); and did not have the RFC to perform past relevant work (step four).  AR 26, 29, 32.

The ALJ found that Garcia had the RFC to perform light work with the limitations that she: "would require a sit-stand option" and "should never climb ladders, ropes, or scaffolding, and not more often than occasionally climb ramps or stairs, or balance, stoop, kneel, crouch, crawl, or perform reaching tasks, including overhead."  AR 29.  A vocational expert testified that an individual with that RFC could perform jobs as clerk/cashier, parking lot attendant, or security guard, and that thousands of such jobs existed in the Bay Area and in the national economy.  AR 33 (ALJ Dec.), 65-67 (Hrg. Tr.).  Based upon that testimony, the ALJ concluded that Garcia could perform other jobs that existed in significant numbers in the national economy (step five).  AR 33.

Garcia challenges the ALJ's determination, asserting that the ALJ erred by:  failing to consider all of her severe impairments, specifically a depressive disorder mental impairment; rejecting her treating physician's opinion; and failing to give sufficient weight to the statement of lay witness Alphonso Guardado.

### A. Consideration of all Severe Impairments

Garcia contends that the ALJ erred by failing to consider all of her severe impairments – specifically, a depressive disorder mental impairment – in addition to the physical impairment related to her spine.  Garcia asserts that had the ALJ considered her mental and physical

4

impairments together, he necessarily would have concluded that she is disabled.

The ALJ in fact did consider Garcia's claim of depressive disorder in his step 2 analysis, in which he discussed each of Garcia's claimed impairments before concluding that only the back-related impairments were severe. *See* AR 26-29 (ALJ Dec.). When addressing Garcia's depressive disorder, the ALJ specifically addressed the four paragraph B criteria of (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation.[6] AR 28-29.

With respect to daily living, the ALJ found that Garcia had no limitations, noting in particular that Garcia does not receive any psychiatric or psychological treatment; a previously prescribed medication, Cymbalta, had been discontinued; Garcia drives, shops for 1-2 hours once or twice a week, talks on the phone to friends, and does her laundry with physical assistance. AR 28. With respect to social functioning, the ALJ found no limitation, noting that Garcia had a steady boyfriend of eleven years; enjoyed spending time with her boyfriend and her sister; and regularly went to church, to the store, and to the park. AR 29. With respect to concentration, persistence, or pace, the ALJ found mild limitation. *Id.* He cited to the report of consulting clinical psychologist, Jenny Forman, who found Garcia's work-related activities to be unimpaired with the exceptions that she found mild impairment in the ability to maintain adequate pace or persistence to perform complex tasks, to withstand the stress of an eight-hour day, and to adapt to changes, hazards, or stressors in the workplace. *See* AR 29 (ALJ Dec.), 509 (Forman Report). The ALJ also noted Garcia's ability to participate in daily activities as described above, her fluency in English and Spanish, and the absence of noticeable deficits in attention during the administrative hearing. AR 29 (ALJ Dec.). Finally, with respect to episodes of decompensation, the ALJ concluded that Garcia had not suffered any episodes of extended duration. *Id.* The ALJ concluded that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of

---

[6] Under applicable regulations, ALJs must evaluate the severity of a claimed mental impairment by applying the so-called "paragraph B criteria" set forth at 20 C.F.R. § 416.920a. *See Slaughter v. Astrue*, No. 3:12–cv–05354–KLS, 2013 WL 632222, *11 n.6 (W.D. Wash. Feb. 20, 2013).

decompensation which have been of extended duration in the fourth area, it is non-severe (20 C.F.R. § 404.1520a(d)(1))." *Id.*

Garcia argues in her motion that the ALJ's analysis "ignores evidence in the record," giving two specific examples. *See* Pl.'s MSJ at 5-6, ECF 15. First, she asserts that the ALJ did not address evidence that Garcia's discontinued medication, Cymbalta, helped but was discontinued because of side effects. *Id.* at 5. Garcia does not explain the significance of this evidence. The medication's efficacy prior to manifestation of side effects does not prove anything about the severity of Garcia's depression. To the contrary, the fact that Cymbalta was not replaced by another medication – or indeed any treatment at all – weighed against a finding of severity. Garcia's second example is Dr. Forman's failure to mention in her report that Garcia previously had tried antidepressants. *Id.* at 6. Garcia does not explain the significance of that omission or how it undermines Dr. Forman's findings with respect to Garcia's mental limitations.

In her reply brief, Garcia makes the additional argument that "the treatment notes from Dr. Brandt reveal severe anxiety." Pl.'s Reply at 1, ECF 17. The treatment notes in question are handwritten notes from an appointment on February 27, 2010. *See* AR 291-93 (2/27/2010 Treatment Notes). The notes are written bullet-point fashion, and indicate "anxious affect husband," and "anxiety." *Id.* The notes do not reflect any opinion that Garcia suffered from "severe" anxiety. Nor do they offer any opinion as to the severity of Garcia's depressive disorder. *Id.*

The Court concludes that substantial evidence supports the ALJ's determination that Garcia's depressive disorder is not severe. Consequently, the ALJ did not err in failing to factor in a "severe" mental impairment when determining Garcia's RFC.

To the extent that Garcia argues that the ALJ failed to consider her non-severe mental impairment when determining her RFC, the Court agrees that a "RFC must reflect all of a claimant's impairments, severe and nonsevere, singly and in combination." *Ortega v. Astrue*, No. EDCV 12-00431-JEM, 2012 WL 6093700, *2 (9th Cir. Dec. 6, 2012) (citing 20 C.F.R. §§ 416.920(e), 416.945(a)(2)). Although the ALJ discussed Garcia's depressive disorder at length during the step 2 analysis, he did not mention depression expressly when determining her RFC.

6

*See* AR 29-32 (ALJ Dec.). However, he did state that the RFC was based "upon the totality of medical opinions in the record." AR 29. "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks and citation omitted). Thus while it would have been preferable for the ALJ to mention Garcia's depressive disorder in his discussion of Garcia's RFC, the Court concludes that the failure to discuss expressly an impairment that that ALJ had determined to be at most, mild, is insufficient to establish error.[7]

Plaintiff's citation in her reply brief to *Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007), does not advance her position. In *Lewis*, the claimant argued that the ALJ had failed to consider his bursitis when determining whether he suffered from a severe impairment or combination of impairments at step 2 of the sequential analysis. The Ninth Circuit concluded that even if the ALJ had failed to consider bursitis at step 2, that error was harmless in light of the ALJ's extensive discussion of bursitis when determining the claimant's RFC at step 4. *Lewis*, 498 F.3d at 911. The Ninth Circuit thus affirmed the decision of the ALJ. *Id. Lewis* has little application to the present case, in which it is undisputed that the ALJ considered Garcia's depressive disorder at step 2 and Plaintiff has not established that the ALJ failed to consider the disorder at step 4.

Plaintiff's reliance on *Hill v. Astrue*, 688 F.3d 1144 (9th Cir. 2012), quoted extensively in the reply brief, is equally misplaced. Plaintiff cites *Hill* for the proposition that the ALJ erred because "he include[d] no mention of Depression in his hypothetical question to the Vocational Expert." Reply at 2, ECF 17. As an initial matter, the cited opinion was withdrawn and superseded by *Hill v Astrue*, 698 F.3d 1153 (9th Cir. 2012). Moreover, neither the withdrawn opinion nor the superseding opinion supports Plaintiff's apparent contention that an ALJ must relay all of the claimant's *diagnoses* to the vocational expert. *Hill* holds that the hypotheticals presented to the vocational expert must "reflect[] all the claimant's *limitations*, both physical and

---

[7] In her reply, Garcia argues that Defendant advances arguments on this point that were not relied upon by the ALJ. Pl.'s Reply at 1, ECF 17. Garcia asserts, correctly, that the ALJ's decision may not be affirmed on grounds upon which the ALJ did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). This Court has considered only the grounds relied upon by the ALJ in denying benefits.

7

1  mental, *supported by the record.*" *Hill*, 698 F.3d at 1161 (emphasis added).  In *Hill*, the Ninth
2  Circuit concluded that the ALJ erroneously had ignored or discounted significant evidence
3  regarding the claimant's panic attacks and anxiety, which resulted in an incomplete RFC that
4  failed to include limitations arising from those disorders.  *Id.*  As a result, the Ninth Circuit
5  concluded that "the hypothetical's assumption concerning Hill's residual functional capacity that
6  she can complete a normal workday and workweek without interruptions from psychologically-
7  based symptoms, and that she can maintain regular attendance, are not supported by the record."
8  *Id.* at 1162.  Because the hypothetical presented to the vocational expert was incomplete, the
9  ALJ's reliance on the vocational expert's answer was improper.  *Id.*  In the present case, however,
10  Plaintiff has not established that the ALJ erred in determining her RFC and thus has not
11  established that the ALJ erred in relying upon the vocational expert's responses to hypotheticals
12  based upon that RFC.

### B. Treating Physician's Opinion

Garcia contends that the ALJ erred in rejecting the "opinions" of treating "physicians." Pl.'s MSJ at 6, ECF 15.  However, her argument focuses on the ALJ's rejection of the opinion of a single treating physician, Dr. Helman.  *See id.* at 6-8.  While Garcia asserts that another treating physician, Dr. Brandt, was incorrectly characterized as a "briefly treating physician," Garcia does not cite to any opinion of Dr. Brandt that was not credited by the ALJ.[8]  *See id.*

When evaluating medical evidence, an ALJ must give a treating physician's opinion "substantial weight."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d at 1228.  "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence."  *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for disbelieving the treating physician.  *Id.* at 1228 n.8.

---

[8] Defendant nonetheless devotes two pages of argument to Dr. Brandt's records, noting that Dr. Brandt did not offer an opinion as to Garcia's capacity to work or impose any limitations on lifting or skill.  *See* Def.'s Opp. at 3-6.

Garcia asserts that the ALJ failed to credit "Dr. Helman's repeatedly stated opinion that Ms. Garcia essentially is incapable of substantial gainful employment." Pl.'s MSJ at 7, ECF 15. However, Garcia does offer any specific citations to the administrative record where that opinion may be found. *See id.* The administrative record is 544 pages long. "The district judge is not required to comb the record" when evaluating a summary judgment motion. *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988); *see also Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (internal quotation marks and citation omitted).

The Court nonetheless has reviewed the administrative record thoroughly. Dr. Helman's records appear at AR 310-78, 498-502, 511-21, 527-29, and 541-44. For the most part, those records are handwritten notes that are indecipherable. Of the comprehensible records, the Court surmises that Garcia may be referring to one or more of the following:

On February 17, 2012, Dr. Helman completed a "Spinal Nerve Root Compression" questionnaire indicating that Garcia showed evidence of nerve root compression and suffered muscle weakness, inability to walk on toes, squat, or rise from a squatting position, and that those conditions had existed since June 26, 2009. AR 512-14.

Also on February 17, 2012, Dr. Helman completed a "Lumbar Spine Residual Functional Capacity Questionnaire" indicating that Garcia suffered from numerous physical symptoms and limitations as a result of her back problems, including abnormal gait, sensory loss, tenderness, swelling, muscle spasm, and impaired sleep. AR 517-21. Dr. Helman opined that Garcia's symptoms and pain would interfere with her attention and concentration constantly, restrict her from sitting more than 5-10 minutes at a time, and require her to take a five-minute break every hour. *Id.* He also stated that Garcia had a number of positional restrictions. *Id.* He stated that those symptoms and limitations had existed since June 26, 2009. *Id.*

On February 22, 2012, Dr. Helman wrote a letter stating that Garcia was in "severe pain," and was "about the same." AR 528. He recommended "continued conservative management." *Id.*

On June 20, 2012, Dr. Helman wrote a letter stating that Garcia was no better, that she

continued to have "very significant sciatic symptoms," and that he could not do an evaluation because Garcia "cannot afford any sort of testing, physical therapy, or anything like that." AR 543.

The ALJ discussed those records in his written opinion, and gave a number of reasons for declining to credit the aspects of the records suggesting severe limitations. *See* AR 31 (ALJ Dec.). First, the ALJ noted that during the same 2012 time frame that Dr. Helman's records were prepared, another physician, Harry K. Jang, indicated that Garcia was negative for all symptoms, had good range of motion with no edema, and displayed normal gait. *See* AR 31 (ALJ Dec.); AR 531-34 (Jang Records). Garcia points out correctly that Dr. Jang saw Garcia in connection with hyperlipidemia, not in connection with her back issues.[9] *See* AR 531-34 (Jang Records). However, the fact remains that Dr. Jang documented a review of all Garcia's systems and performed a physical examination, the results of which are directly contrary to Dr. Helman's statements. The ALJ pointed out that although Dr. Helman opined that Garcia had not improved over time, he also acknowledged that he had not conducted any type of recent testing; thus there were no clinical findings supporting the opinion. AR 31 (ALJ Dec.). The ALJ also noted that Dr. Helman repeatedly indicated that Garcia was unable to sit for more than 5-10 minutes and suffered other severe limitations as of an onset date of *June 26, 2009*, but that Garcia had worked full-time for nearly six months after that date. *Id.* Moreover, the ALJ indicated that during the administrative hearing he observed Garcia sitting for well over the 5-10 tolerance indicated by Dr. Helman. *Id.* The ALJ concluded that Dr. Helman's assessments were "inconsistent with the objective medical signs and laboratory findings in the record, as a whole." *Id.*

Because Dr. Helman's opinion was contradicted by other evidence the record, the ALJ had only to articulate specific and legitimate reasons for discounting it, supported by substantial evidence. The Court concludes that the ALJ did so. While other evidence in the record might justify a different determination, the ALJ's determination satisfies the applicable legal standards;

---

[9] Garcia also makes much of the fact that the ALJ cited to the wrong exhibit number for Dr. Jang's records; the ALJ referenced Exhibit *4*F instead of Exhibit *14*F. That clerical error does not undermine the ALJ's decision, since the ALJ referred to Dr. Jang by name and his records were included in the administrative record.

10

thus it is not the role of the Court to second-guess it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C. Statements of Alphonso Guardado

Garcia contends that the ALJ erred in failing to credit fully the statement of her boyfriend, Alphonso Guardado ("Guardado"). Guardado submitted a Third Party Function Report stating that he lived with Garcia and providing information about her daily activities. *See* AR 215-22 (Function Report). ALJ addressed the report as follows:

> In a third party function report, the claimant's boyfriend of 11 years indicated that the claimant was unable to bathe herself, but she could do light cleaning, drive, shop, pay bills, handle bank accounts, read books, watch TV, go to church, the store and to the park on a "regular basis" but walk only two blocks. (Ex. 7E). I have carefully and fully considered the entirety of this lay 3rd party report but have accorded it no more than its appropriate, minimal, weight.

AR 31 (ALJ Dec.).

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (internal quotation marks and citation omitted). While the ALJ could have been clearer about his reasons for rejecting Guardado's statements regarding Garcia's limitations, the ALJ appears to have found those statements not credible in light of Guardado's recitation of all the thing that Garcia can and does do on a regular basis. "An ALJ may reject lay witness testimony for being internally inconsistent or referencing activities of daily living inconsistent with an allegation of disability." *Chilcote v. Astrue*, No. 3:12–CV–00421–CL, 2013 WL 2033540, at *8 (D. Or. Apr. 8, 2013). Accordingly, because the ALJ specifically considered Guardado's Third Party Function Report, and indicated that it would be given minimal weight because of conflicting statements therein, the Court concludes that Garcia has not demonstrated error.

In conclusion, Garcia has failed to demonstrate that the ALJ's decision "is not supported by substantial evidence" or "is based upon the application of improper legal standards." *See*

*Lingenfelter*, 504 F.3d at 1035.

## IV. ORDER

For the foregoing reasons,

(1) Plaintiff's motion for summary judgment is DENIED;

(2) Defendant's cross-motion for summary judgment is GRANTED; and

(3) Upon the entry of judgment, the Clerk shall close the file.

Dated: December 15, 2014

_____
BETH LABSON FREEMAN
United States District Judge